**PHOENIX AMUSEMENT CO., Appellant, v GLANDER, Appellee.**

Board of Tax Appeals.

No. 11514.   Decided April 1st, 1947.

## OPINION

This cause came on to be heard upon an appeal of The Phoenix Amustment Company from the action of the tax commissioner in denying the appellant's application for a refund of sales taxes claimed to have been erroneously paid during the period from January 1, 1942, to December 31, 1944, in the sum of $77.37.

The Phoenix Amusement Company is a foreign corporation incorporated under the laws of the State of Kentucky and duly licensed to do business in the State of Ohio throughout the entire period covered by the application for refund and at the present time.

The principal business office of said company is located in Gloversville in the State of New York, and all of the books and records of said company are kept there. Peter E. Klein, of Cleveland, Ohio, is the statutory agent for the purpose of complying with the corporation statutory laws as the person on whom service of summons is to be made in serving said company in this State, and Howard Antevil, of Gloversville,

New York, is the resident counsel and vice president of said company.

On July 15, 1945, appellant filed an application with the tax commissioner of Ohio for refund of taxes paid on certain five cent sales made by means of vending machines during the period from January 1, 1942, to December 31, 1944. Said taxes were not passed on to the consumer, but were absorbed by the appellant.

On February 21, 1945, the Supreme Court of Ohio decided the case of **Winslow-Spacarb, Inc., 144 Oh St 471,** in which it held that sales at a price of less than nine cents per unit exclusively, were not subject to tax under §5546-2 and §5546-12a **GC.**

The appellant claims that its first knowledge that these sales were not subject to tax was on May 9, 1945, and, therefore, contends that it should have ninety days from the date it claimed it had knowledge of the decision of the Supreme Court. Mr. Antevil, the resident counsel and vice president of the company, testified that the first information said company had of the above Supreme Court decision was in the early part of May, 1945, when the office manager handed him a bulletin which stated that under a decision of the Ohio Supreme Court five cent sales were no longer subject to a tax and that he immediately wrote their statutory agent, Mr. Klein of Cleveland, Ohio, for information about said case and received a letter from Mr. Klein on May 9, 1945, giving him the decision of said Court; and, as above stated, the appellant filed an application for a refund on July 15, 1945, and on March 15, 1946, the tax commissioner denied the application of appellant for a refund for the reason that same was not filed within the time prescribed by statute.

The testimony of appellant is that all of the sales in question were under nine cents. This evidence is not disputed. It is, therefore, assumed by the Board that the payments of sales taxes for which a refunder is asked were erroneously made under a mistake of law.

With respect to the right of a vendor or other taxpayer to make application for a refund of sales taxes, §5546-8 **GC,** reads in part as follows:

"The treasurer of state shall redeem and pay for any unused or spoiled tax receipts at the net value thereof, and he shall refund to vendors the amount of taxes illegally or erroneously paid or paid on any illegal or erroneous assessment where the vendor has not reimbursed himself from the con-

sumer. When such illegal or erroneous payment or assessment was not paid to a vendor but was paid directly to the treasurer of state, or an agent of the treasurer of state, by the consumer, the treasurer of state shall make refund to the consumer. In all cases an application shall be filed with the tax commission (commissioner) on the form prescribed by it and must be filed within a period of ninety days from the date the tax receipts are spoiled, or from the date it is ascertained that the assessment or payment was illegal or erroneous. On filing of such application the tax commission of Ohio shall determine the amount of refund due and shall certify such amount to the auditor of state. The auditor of state shall thereupon draw a warrant for such certified amount on the treasurer of state to the person claiming such refund."

From the provisions of the statute above quoted it appears that there are two instances in which the vendor or other taxpayer, as the case may be, may make application to the tax commissioner for the refund of sales taxes: (1) for the refund of the net value of prepaid tax receipts which have been spoiled while in the hands of the vendor and (2) for the refund of taxes, the payment or assessment and payment of which was illegal. In one case the application is required to be filed within a period of ninety days from the date the tax receipts are spoiled, and in the other case the application is to be filed within ninety days "from the date it is ascertained that the assessment or payment was illegal or erroneous"; and in neither case is the limitation as to the time within which the application is to be filed with the tax commissioner conditioned or in terms made to depend upon notice to the taxpayer of the particular event out of which the right to the refund arises, although as to refunds of the first kind above mentioned, it would be an unusual case where the vendor would not have immediate or very early notice of the casualty causing the destruction or other spoilage of prepaid tax receipts on hand at the time of such casualty. The application for refund now before us on this appeal is predicated on the ground that the payment or assessment and payment of the taxes here in question was illegal and erroneous; and the only question before the Board for determination is whether said application was filed with the tax commissioner within ninety days from the date it was ascertained that the payment or assessment and payment of such taxes was illegal and erroneous. It does not appear that there was at any time any authoritative determination, judicial or otherwise, to the effect that

the particular sales taxes here in question were illegally assessed or paid; and, in this connection, it may, of course, be said that the decision and judgment of the Supreme Court of this State in the Winslow-Spacarb, Inc. case was not and is not **res judicata** as to this question. Nevertheless, it appears in the record of this case, aside from the recital of the fact in the order of the tax commissioner herein complained of, that the application for the refund of taxes filed with the tax commissioner in this case was and is predicated upon the decision and judgment of the Supreme Court in the Winslow-Spacarb, Inc. case. Nor is there any question but that the decision and judgment of the Court in this case authoritatively determined that sales taxes paid or assessed and paid on individual sales of the kind here in question are illegal and erroneous; and if this application for sales tax refund was filed with the tax commissioner within the time prescribed by the statute, it is not questioned but that under hte decision of the Supreme Court in the case above cited the tax commissioner was not only authorized but required to make a refund of the taxes involved in this case. In other words, when the Supreme Court made and entered its decision and judgment in the Winslow-Spacarb, Inc. case on February 21, 1945, it was then and thereby "ascertained" that sales taxes on individual sales exclusively of the kind here in question were and are illegal and erroneous whether such sales taxes be assessed under the provisions of §5546-2 or §5546-12a, GC. And in this connection it is noted that although the judgment of the Court in the Winslow-Spacarb, Inc. case was not conclusive against the appellant, as a stranger to the record in that case, said judgment was and is conclusive as to the appellant and to all other stragers to the record; of the fact of the rendition of said judgment and of the legal consequences which result from that fact. 34 C. J. (Judgments), pp. 1049, 1052; **Binder v Finkbone, 25 Oh St 103.**

Aside from the considerations above noted, it is evident that the proper definition or meaning of the word "ascertain" would determine whether appellant had properly availed itself of the remedy provided by §5546-8 GC. The Winston Universal Reference Library defines ascertain as follows: "To make certain; find out; determine definitely by test or examination." Black's Law Dictionary, Third Edition, 1934, defines it as follows: "To fix; to render certain or definite; to estimate or determine; to clear doubt or obscurity." Webster defines it as follows: "To make certain to the mind; to make sure of; to determine." In Words and Phrases, Vol. 4, p. 341, may be found the following:

" 'Estimate,' as used in privilege tax law providing that, upon taxpayer's neglect to make a return, the Tax Commission shall make an 'estimate' based upon an examination of the taxpayer's books, or any information in its possession, and upon the basis of the estimated amount shall compute and assess the tax payable by the delinquent taxpayer is used in the sense of 'ascertain' or 'compute'. Laws 1935, c. 73, Sec. 309. Lougee v New Mexico Bureau of Revenue Commissioner, 76 P. 2d. 6, 17, 41 N. M. 115."

It will be seen by the above and many other definitions that to ascertain is to determine something by some process or reasoning; or to make certain by some method of computation and is not simply notice or information or knowledge of a fact or evidence or that something has been done and, therefore, requires the working out or computation of something. The Board is, therefore, of the opinion that it was ascertained at the time the Supreme Court of Ohio decided the Winslow-Spacarb Inc. case, to wit, February 21, 1945, that sales at a price less than nine cents per unit were not subject to a tax under §§5546-2 and 5546-12a GC, and that the appellant had ninety days from that date in which to file an application for a refund and having failed to do this, the Board finds that the tax commissioner did not err in disallowing appellant's claim for a refunder. To hold otherwise would be to allow a taxpayer many years after the decision in this case, to secure a refund on a statement that it did not know what the law was, and thus it would be useless to have a statute of limitation. If the legislature had intended that the ninety day period should not start to run until a taxpayer had actual knowledge of the law it certainly would have said so. The right to make application for a refund is statutory and must be strictly complied with to entitle a taxpayer to that right. See **Groesbeck v Cincinnati, 51 Oh St 365, 37 N. E. 707.**

The Board finds that appellant has not complied with the provisions of §5546-8 GC, and that under the circumstances of this case the tax commissioner was without authority to grant such application for refund.

It is, therefore, considered and adjudged by the Board of Tax Appeals that the action of the tax commissioner herein complained of be, and the same hereby is, affirmed.

BOARD OF TAX APPEALS.